**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CASE NO. 3:09-CV-00004**

**SPRINGDALE VENTURE, LLC**
**and FENLEY OFFICE HOLDINGS, LLC**                                     **PLAINTIFFS**

**v.**

**US WORLDMEDS, LLC**
**MAIN STREET REALTY, INC.**
**and LOUISVILLE METRO PLANNING COMMISSION**                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiffs' Motion to Remand (DN 9). Defendant Louisville Metro Planning Commission ("Planning Commission") has responded (DN 16), and Plaintiffs have replied (DN 22). This matter is now ripe for adjudication. For the following reasons, Plaintiffs' Motion is DENIED.

Also before the Court is Defendant US WorldMeds, LLC's ("USW") and Defendant Main Street Realty, Inc.'s ("Main Street") Motion to Dismiss (DN 5). The Planning Commission indicated that it has no objection to the motion (DN 6). Plaintiffs have responded (DN 11), USW has replied (DN 13), and Main Street has joined USW's reply (DN 15). This matter is now ripe for adjudication. For the following reasons, Defendants' motion is DENIED.

**BACKGROUND**

This zoning case arises from the Planning Commission's decision to allow USW to build a 36,000 square foot three-story non-residential office structure on Lot 6 of the Springdale Development project. The Springdale Development Project ("SDP") is a large-scale development project consisting of multiple commercial, office, hotel and residential uses that are spread across multiple lots, which are owned by multiple property owners. Main Street owns

Lot 6; USW has a contract to purchase Lot 6 and is the applicant in the zoning matter at issue. Plaintiffs Springdale Venture, LLC ("Springdale") and Fenley Office Holdings, LLC ("Fenley") are owners of certain undeveloped real property within the SDP. Fenley also holds the contractual right to purchase a portion of the undeveloped real property currently owned by Springdale.

The facts set forth in Plaintiffs' Complaint are as follows. The Planning Commission approved development of the SDP on December 12, 1999. Agreements reached among the Planning Commission and the original applicants were memorialized by the General Development Plan, the Binding Elements, and in the transcripts of the original public hearings. The Planning Commission and the original applicants agreed that Lot 6 of the SDP would be developed as a two-story substantially residential office structure not to exceed 24,000 square feet in total area. They also agreed that the total square footage available for development in the SDP would not exceed 584,000 square feet; 560,000 square feet was specifically reserved for the main office properties and the balance, 24,000, was reserved for Lot 6. Binding Element No. 13 states that "[t]hese binding elements shall run with the land."

On June 2, 2008, USW requested the Planning Commission's approval to build a 36,000 square foot three-story non-residential office structure on Lot 6. Plaintiffs state that they vigorously opposed USW's proposal and repeatedly called their concerns and objections to the attention of the Planning Commission.

On November 6, 2008, the Planning Commission approved USW's request to build the 36,000 square foot structure and amended Binding Element No. 32, which previously stated that "[t]he 24,000 square foot office building on Lot 6 shall be constructed in a style that is

substantially residential in nature." The Planning Commission did not modify Binding Element No. 4, which caps the total amount of office space in the SDP at 584,000 square feet.

In their Complaint, Plaintiffs allege that the Planning Commission violated the Fifth and Fourteenth Amendments of the Constitution of the United States and Section 2 of the Constitution of the Commonwealth of Kentucky. Count I of Plaintiffs' Complaint alleges that the Planning Commission routinely failed to afford Plaintiffs due process and equal protection of the law; Count II of Plaintiff's Complaint alleges that the Planning Commission's approval of USW's proposal constitutes an unlawful taking of private property without just compensation; Count III of Plaintiff's Complaint alleges that the Planning Commission's actions were *ultra vires*.

## DISCUSSION

### I. Motion to Remand

Plaintiffs state that the crux of their Complaint concerns whether the Planning Commission has the authority to unilaterally modify the Binding Elements without the consent of all those who own property under the General Development Plan subject to the Binding Elements. If the Planning Commission must secure the consent of all property owners before modifying the Binding Elements, then the takings and other constitutional questions raised by the Complaint will never need to be addressed by any court. Therefore, Plaintiffs contend that the preliminary issue to be resolved is whether the Planning Commission's actions were *ultra vires*, violating Plaintiffs' rights to due process and equal protection under the Fifth and Fourteenth Amendments of the Constitution of the United States and Section 2 of the Constitution of the Commonwealth of Kentucky, as alleged in Count III of Plaintiffs' Complaint.

In support of their Motion to Remand, Plaintiffs cite 28 U.S.C. § 1441(c) and 28 U.S.C. § 1367(c).

### A.     28 U.S.C. § 1441(c)

Section 1441(c) provides as follows:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title [federal question jurisdiction] is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

Plaintiffs argue that pursuant to section 1441(c) this Court should remand all matters because state law claims predominate and are essential to the crux of Plaintiffs' claims.

Section 1441(c) was amended by the Judicial Improvements Act of 1990. Prior to 1990, the second phrase of the subsection read "or, in its discretion, may remand all matters not otherwise within its original jurisdiction." Some courts have interpreted the second phrase in the amended section 1441(c) as permitting a court to remand entire cases, even those containing federal claims, so long as state law claims predominate over the federal claims in each case. *See Majeske v. Bay City Bd. of Ed.*, 177 F.Supp.2d 666, 672 (E.D. Mich. 2001) (listing cases). Other courts have held that they do not have the discretion to remand an entire case that includes federal question claims, even if state law claims predominate the case. *Id.* at 673. The Court of Appeals for the Sixth Circuit has not addressed the interpretation of the second phrase of section 1441(c), but the most recent decision of a district court within the Sixth Circuit that does address this issue provides a thorough and helpful discussion of the contrary arguments. *See id.* at 671-73.

The Court finds that the proper reading of section 1441(c) does not permit a court to

4

remand a claim that states a federal question. As the *Majeske* court noted, "in the absence of extraordinary circumstances, '[f]ederal courts have a virtually unflagging obligation to exercise the jurisdiction conferred upon them by the coordinate branches of government and duly invoked by litigants.'" *Id.* at 673 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Section 1441(c)'s authorization to "remand all matters" is best understood as allowing a court to remand the "otherwise non-removable claims" rather than a whole case including properly removed claims arising under federal law. *See id.* In other words, "[a]lthough the Court has discretion to remand the state law claims only, *see* 28 U.S.C. § 1441(c), and to remand the entire case if the federal claim is dismissed, *see* 28 U.S.C. § 1367(c)(3), there is no discretionary authority to remand a case and decline federal jurisdiction over a federal-question-based claim merely because state law claims otherwise predominate." *Id.*

Plaintiffs' claims are brought pursuant to both the U.S. Constitution and the Kentucky Constitution. This Court has jurisdiction over all the claims arising under the U.S. Constitution. 28 U.S.C. § 1331. Section 1441(c) does not authorize the Court to remand properly removed federal question claims. Therefore, regardless of whether Plaintiffs' state law claims otherwise predominate, Plaintiffs' argument that the entire case should be remanded to state court pursuant to 28 U.S.C. § 1441(c) fails.

### B. 28 U.S.C. § 1367(c)

Plaintiffs also argue that the Court should decline to exercise supplemental jurisdiction over their state law claims because the claims raise a novel or complex issue of state law and substantially predominate over the federal question claims. 28 U.S.C. §§ 1367(c)(1) & (c)(2).

Moreover, Plaintiffs argue that the Court should decline jurisdiction for "other compelling reasons," 28 U.S.C. § 1367(c)(4), namely comity and judicial economy.

"[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (quoting *Ahearn v. Charter Twp of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir.1996)). Because Plaintiffs' state law claims arise under the exact same set of facts as their federal question claims, the Court may exercise supplemental jurisdiction over the state law claims.

The Court, however, may decline to exercise supplemental jurisdiction over Plaintiffs' state law claims if those claims raise a novel or complex issue of State law, substantially predominate over Plaintiffs' federal question claims, or if there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). "[I]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998).

Plaintiffs state that their claim that the Planning Commission did not have the authority to approve USW's requests without the consent of all the vested property owners, as alleged in Count III of their Complaint, presents issues of first impression under Kentucky law. Thus, comity dictates that Kentucky state courts should resolve this issue. Plaintiffs also state that this

6

issue is a uniquely local matter. For these reasons Plaintiffs argue the Court should decline to exercise supplemental jurisdiction over Count III. As for Counts I and II, Plaintiffs state that these claims also turn upon underlying facts related to local regulation, policy, procedure and state law. Overall, because the Court's involvement in the case has been limited, Plaintiffs argue that judicial economy weighs in favor of remand.

The Court is not persuaded by Plaintiffs' arguments to decline supplemental jurisdiction over the state law claims presented in this case. The fact that this case involves local regulations and that Plaintiffs may be proceeding under a unique theory as to why the Planning Commission's actions were arbitrary does not outweigh the default assumption that the court will exercise supplemental jurisdiction over all related state law claims. Additionally, while Kentucky law authorizes an aggrieved entity to appeal a final action of the Planning Commission to state court, KRS § 100.347, it does not provide that state courts shall have exclusive jurisdiction over such appeals, *contra Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000) (finding that the Tennessee legislature's unequivocal preference that claims arising under the Tennessee Governmental Tort Liability Act be handled by state courts is an exceptional circumstance that justifies declining supplemental jurisdiction). Further, at this juncture it appears to the Court that the predominate claims asserted by Plaintiffs are constitutional violations. While it may be that the resolution of these issues will be determined by whether the Planning Commission had authority to act as it did, that does not change the nature of the claims asserted by Plaintiffs nor necessarily make them complex or unique.

**II.   Motion to Dismiss**

Defendants USW and Main Street have also moved to dismiss, arguing that Plaintiffs

7

have failed to exhaust their administrative remedies and therefore the Court lacks jurisdiction over this matter. Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," *Am. Telecom Co. v. Leb.*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.*, 491 F.3d 320, 330 (6th Cir. 2007). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.*, 368 F.3d 569 (6th Cir. 2004).

      The parties agree that generally a plaintiff must exhaust its administrative remedies prior to seeking judicial relief. *See Commonwealth v. DLX, Inc.*, 42 S.W.3d 624, 625 (Ky. 2001). Nowhere in Defendants' briefs, however, do they point to what administrative remedy Plaintiffs must have exhausted before appealing to the state court. Instead, they argue that Plaintiffs should have requested an additional 12,000 square feet for their property from the Planning Commission before bringing this action. But Plaintiffs are not seeking additional square footage, they are seeking to undo the Planning Commission's unilateral approval of USW's request to

build the 36,000 square foot structure on Lot 6.

Kentucky Revised Statute 100.347(2) provides that "[a]ny person or entity claiming to be injured or aggrieved by any final action of the planning commission shall appeal from the final action to the Circuit Court of the county in which the property, which is the subject of the commission's action, lies." Defendants do not argue that the Planning Commission's decision was not a "final action." The Court is not aware of an additional administrative remedy that Plaintiffs must have exhausted before appealing the action, as they did, to the Jefferson Circuit Court. According to KRS § 100.347, Plaintiffs took the proper next step to appeal their claim.

Simply put, Defendants have not sustained their burden of showing any failure to exhaust. Defendants' arguments that Plaintiffs failed to make certain requests to the Planning Commission is not a failure to exhaust.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Plaintiffs' Motion to Remand is DENIED and Defendants' Motion to Dismiss is DENIED.