**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CASE NO. 3:09-CV-00004**

**SPRINGDALE VENTURE, LLC**
**and FENLEY OFFICE HOLDINGS, LLC**                                    **PLAINTIFFS**

**v.**

**US WORLDMEDS, LLC**
**MAIN STREET REALTY, INC.**
**and LOUISVILLE METRO PLANNING COMMISSION**                 **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the Court upon Plaintiff Fenley Office Holdings, LLC's Brief In Support Of Its Complaint And Appeal (DN 33). Defendants have responded (DN 42), and Plaintiff Fenley Office Holdings, LLC has replied (DN 52). This matter is now ripe for adjudication. For the reasons that follow, Plaintiffs' Complaint and Appeal is DISMISSED.

**BACKGROUND**

This zoning case arises from Defendant Louisville Metro Planning Commission's ("Planning Commission") decision to allow Defendant US Worldmeds, LLC ("USW" or "Worldmeds") to build a 36,000 square foot three-story non-residential office structure on Lot 6 of the Springdale Development Project ("SDP"). The SDP is a large-scale development project consisting of multiple commercial, office, hotel and residential uses that are spread across multiple lots, which are owned by multiple property owners. Defendant Main Street Realty, Inc. ("Main Street") owns Lot 6; USW has a contract to purchase Lot 6 and is the applicant in the zoning matter at issue. Plaintiffs Springdale Venture, LLC ("Springdale") and Fenley Office Holdings, LLC ("Fenley") are owners of certain undeveloped real property within the SDP.

The Planning Commission approved development of the SDP in December 1999. A

number of conditions restricted the development of the SDP, including Binding Element 32

which provided Lot 6 would be developed as a two-story substantially residential office structure

not to exceed 24,000 square feet in total area.  In the summer of 2008, USW requested the

Planning Commission's approval to build a 36,000 square foot three-story non-residential office

structure on Lot 6.  Plaintiffs opposed USW's proposal and called their concerns and objections

to the attention of the Planning Commission.  On November 6, 2008, the Planning Commission

approved USW's request to build the 36,000 square foot structure.  The Planning Commission

also amended Binding Element 32, striking the prior restriction so as to allow for USW's

proposed building.

Plaintiffs appealed the Planning Commission's decision to state court and also to the

Louisville Metro Council ("Metro Council").  The essence of Fenley's arguments are

encompassed in this assertion: "when Fenley purchased and developed its properties, [it] did so

with the legitimate expectation that Lot 6 would be developed as a 24,000 square foot two-story

and substantially residential structure," but now it is "being forced to compete with essentially

36,000 square feet of new corporate Class A office space that it otherwise had no expectation it

would ever have to contend with."  Fenley complains that this is "[h]ardly fair."

## STANDARD

Judicial review of a planning commission's decision is limited to determining whether

the decision was "arbitrary."  *See Danville-Boyle County Planning Comm'n v. Centre Estates*,

190 S.W.3d 354, 359 (Ky. Ct. App. 2006) (citing *Am. Beauty Homes Corp. v. Louisville &*

*Jefferson County Planning & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964)).  "An

administrative ruling is arbitrary, and therefore clearly erroneous, if it is not supported by

substantial evidence." *Id.* In determining arbitrariness, a court may also consider "whether the

agency exceeded its statutory authority" and "whether the parties were afforded procedural due

process." *Keogh v. Woodford County Bd. of Adjustments*, 243 S.W.3d 369, 372 (Ky. Ct. App.

2007) (citing *Am. Beauty*, 379 S.W.2d at 372).

## DISCUSSION

### I.        The Metro Council is not an indispensable party.

Defendants argue that the Planning Commission's November 6, 2008, decision approving

USW's application was not the final action on the USW application. Instead, they assert that the

final action from which Fenley was required to appeal was the Metro Council's December 16,

2008, decision not to hold a public hearing. Because Fenley did not appeal that decision within

thirty days, naming Metro Council as a defendant, Defendants argue this case must be dismissed

for lack of jurisdiction.

In support of their argument, Defendants cite KRS 100.347(3), which provides as

follows:

> Any person or entity claiming to be injured or aggrieved by any final action
> of the legislative body of any city . . . relating to a map amendment shall
> appeal from the action to the Circuit Court of the county in which the
> property, which is the subject of the map amendment, lies. Such appeal shall
> be taken within thirty (30) days after the final action of the legislative body.
> All final actions which have not been appealed within thirty (30) days shall
> not be subject to judicial review. The legislative body shall be a party in any
> such appeal filed in the Circuit Court.

The procedure by which a map amendment may be accomplished is governed by KRS 100.211.

*Hacker v. Baesler*, 812 S.W.2d 706, 708 (Ky. 1991). KRS 100.211(1) states that a proposal for a

zoning map amendment shall be referred to the planning commission, which shall hold at least

one public hearing and then make findings of fact and a recommendation of approval or

disapproval of the proposed map amendment to the various legislative bodies or fiscal courts involved. The legislative body must take final action upon the proposed map amendment within ninety days of the planning commission's final action. KRS 100.211(7). "[A]n ordinance adopting a zoning amendment, enacted pursuant to the statute, is final and effective, subject only to judicial review pursuant to KRS 100.347(3)." *Hacker*, 812 S.W.2d at 708; *see also Leslie v. City of Henderson*, 797 S.W.2d 718, 720 (Ky. Ct. App. 1990) (holding that "final action" under KRS 100.347(5) occurred when the legislative body enacted the ordinance amending the zoning map, the date of the ordinance's second reading and final passage).

Here, USW did not propose a map amendment to be passed by ordinance of the Metro Council. USW filed an application with the Planning Commission for approval of a development plan and related waiver. Fenley objects to the Planning Commission's approval of that application. Therefore, Fenley properly appealed the Planning Commission's November 6, 2008, decision approving USW's application, pursuant to KRS 100.347(2), which provides in relevant part as follows:

> Any person or entity claiming to be injured or aggrieved by any final action of the planning commission shall appeal from the final action to the Circuit Court of the county in which the property, which is the subject of the commission's action, lies. Such appeal shall be taken within thirty (30) days after such action.[1]

The fact that Fenley also requested a review by the Metro Board of the Planning Commission's decision pursuant to the Land Development Code for All of Louisville-Jefferson

---

[1] KRS 100.347(5) further provides that "final action shall be deemed to have occurred on the calendar date when the vote is taken to approve or disapprove the matter pending before the body." "The word 'body' as used in the statute refers to the Planning Commission as well as to legislative bodies." *Triad Dev./Alta Glyne, Inc. v. Gellhaus*, 150 S.W.3d 43, 45-46 (Ky. 2004).

County, Kentucky ("LDC") does not effect its right to appeal pursuant to KRS 100.347(2).  LDC

§ 11.7.5 provides that a legislative body may decide to review the Planning Commission's

approval or denial of any amendment to any plan certain development plan.  If the legislative

body adopts a resolution granting review, it must uphold, modify, or overturn the Planning

Commission's decision within ninety days.  Here, no evidence has been presented to the Court

that the Metro Board took legislative action by upholding, modifying, or overturning the

Planning Commission's decision.  The decision not to hold a public hearing is not a final action.

Fenley could not seek judicial review pursuant to LDC § 11.7.6 and KRS 100 if there was

nothing to review.  Therefore, Fenley properly appealed the Planning Commission's decision

pursuant to KRS 100.347(2).  Consequently, Federal Rule of Civil Procedure 19 does not require

joinder of the Metro Council.

> **II.   The Planning Commission did not exceed its statutory authority by not obtaining the consent of all owners of property subject to the specifications of the General Development Plan prior to amending Binding Element 32.**

Fenley argues that the Planning Commission's actions were arbitrary because it failed to

strictly comply with the requirements of the Kentucky Revised Statutes, the LDC regulations and

its own policy and procedures.  LDC § 11.4.7.E.1 outlines the review procedure for an

amendment to any binding element of an approved development plan.  The code states that any

such amendment requires Planning Commission approval, and shall follow Category 3 Review

Procedures.  LDC § 11.4.7.E.1.  These procedures, found at LDC § 11.6.4, require applications

for development plan approval to be "submitted on forms supplied by the department" and

"signed by the property owner or his/her agent."  LDC § 11.6.4.B.1.  Furthermore, the Planning

Commission's Bylaws and Policies ("PC") requires all applications to be presented in writing or

on forms provided by the Commission.  PC § 3.02.01.

USW never applied to amend Binding Element 32.  USW's applications only relate to a revised district development plan and landscape waiver.  (R. 5, 28.)  USW's 36,000 square foot proposed project violated Binding Element 32, which at that time included the restriction that "[t]he 24,000 square foot office building on Lot 6 shall be constructed in a style which is substantially residential in nature."  The Planning Commission amended Binding Element 32, striking this restriction, without any application being filed.

Count Three of Plaintiffs' Complaint alleges that the "Planning Commission's actions in approving [USW]'s requests were *ultra vires* because the Defendant Planning Commission did not obtain the signatures and consents of all the directly affected property owners prior to review of [USW]'s requests."  The essence of this argument is that the Planning Commission does not have the authority to unilaterally modify a Binding Element without the consent of all those who own property under the General Development Plan subject to the Binding Elements.  Plaintiffs' allegation is confusing, however, to the extent that they have repeatedly stated that USW applied to modify the Binding Elements, and that the Planning Commission's error was considering this application without the proper signatures.  Even Fenley's present brief, which notes USW never filed an application to amend the Development Plan or its Binding Elements, still contains the argument that "any actions taken by the Planning Commission in response to [USW]'s requests to modify the General Development Plan and its corresponding General Binding Elements are void and of no effect."  This argument is difficult to follow because USW never applied to amend a Binding Element, consequently how could it fail to acquire the proper signatures on an application it never filed?

Defendants argue that Fenley is precluded from arguing that the Planning Commission's

modification of Binding Element 32 was arbitrary because it acted without an amended

application from USW including such a request.  Defendants state that Fenley failed to raise this

issue before the Planning Commission, nor did it include this allegation in its Complaint.

"Failure to raise an issue before an administrative body precludes a litigant from asserting that

issue in an action for judicial review of an agency's action."  *Personnel Bd. v. Heck*, 725 S.W.2d

13, 17 (Ky. Ct. App. 1986).  Defendants argue that Fenley never objected to the fact that USW's

applications did not include a request to amend a Binding Element, and so the Planning

Commission never had an opportunity to rule on the issue or correct any alleged error, and

Defendants have not had an opportunity to prepare an adequate defense.

Even though Fenley never specifically objected to the lack of a formal written application

amending Binding Element 32, the Court finds that it did sufficiently raise the fundamental issue

of whether the Planning Commission could modify Binding Element 32 without the consent of

all the affected property owners.  For example, on November 5, 2008, Plaintiffs wrote a letter to

the Planning Commission arguing that "[a]llowing a single property owner to unilaterally change

binding elements set forth for development under a General Development Plain without the

consent of the other property owners subject to the same binding elements constitutes a gross

injustice."  (R. 263.)  Apparently believing that USW did apply to modify Binding Element 32,[2]

Plaintiffs argued "all affected property owner's signatures should be on the Applicant's

---

[2] The Planning Commission also appears to have operated as if USW applied to amend
Binding Element 32.  For example, in an email sent by Charles Weber on August 27, 2008, he
states that "[t]he applicant requests approval of Amendment to Binding Element 32 of the
General Plan 9-68-99 to allow modifications to the proposed building on Lot 6."  (R. 70.)

application." (R. 264.)  The following day at the public hearing, counsel argued that the Planning Commission only had authority to amend binding elements "when they are properly submitted," and here the jurisdictional "light switch" was not on to grant the Planning Commission "power" to amend Binding Element 32 because the affected property owners had "not submitted this inquiry" to the Planning Commission.  (DN 46 Ex. A DVD: Nov. 6, 2008 Planning Commission Public Hearing at 6:14:50-6:17:30.)  Similarly, in the Complaint Plaintiffs alleged "Defendant Planning Commission was without jurisdiction to consider Defendant WorldMeds' requests."

Because the issue was not raised below, the Court will not examine whether the Planning Commission acted arbitrarily by modifying Binding Element 32 without a written application making this request.  The Court will, however, examine the fundamental underlying issue of whether the Planning Commission acted arbitrarily by modifying Binding Element 32 without the consent of all the affected property owners.  Defendants have been sufficiently notified of this issue, it was raised before the Planning Commission and in this appeal, and Defendants have had an adequate opportunity to prepare a defense.

Fenley argues that before modifying Binding Element 32, the Planning Commission was required to obtain the consent of all affected property owners.  To support this argument, Fenley first points to the application form, which states that "**IF PROPERTY IS IN JOINT OWNERSHIP, ALL OWNERS OF RECORD MUST SIGN THE APPLICATION**."  (R. 2.) Fenley then asserts that in the context of amending a Binding Element, the term "property" refers to "the entire Springdale Development Project."  Consequently, Fenley contends the owners of all of the properties that are subject to the specifications of the Development Plan and to the

8

terms of its corresponding Binding Elements are joint owners and must sign an application to modify a Binding Element to enable the Planning Commission with the power to take action.

Defendants disagree, stating that the Planning Commission's Bylaws and Policies "do not require the signatures of all property owners bound by a general plan where an application seeks to amend a general plan binding element or related development plan." They reason that if such additional signatures were required, "the regulations would certainly state that fact." They also state that "property" only refers to the property described on the proposed plan, Lot 6, and Lot 6 has never been under joint ownership.

The Planning and Design Services Application consists of five pages. The first page is a checklist of over forty items, ranging from landscape waiver to revised detailed district development plan to amendment to binding element, and applicants are instructed to check all that apply. The application does not change when a property owner is seeking to amend a binding element. There is no indication that in the context of amending a binding element "property" means all of the properties that are subject to the specifications of the Development Plan and to the terms of its corresponding Binding Elements, whereas in a different context the same word on the same form means simply the property described on the proposed plan. At best, Fenley's interpretation of "property" on the application form is questionable. The Court finds that "property" as used refers to the property described in the proposed plan, Lot 6.

Fenley has not cited any statute, code, regulation, policy, case law or binding element that explicitly states all property owners must agree to a change in a general binding element. The only party mentioned as necessary to approve an amendment to a binding element by the LDC is the Planning Commission. LDC § 11.4.7.E.1 ("Amendment to any binding element of

an approved development plan . . . shall require Planning Commission approval."). Similarly, Binding Element 1, discussing amendment of binding elements, only states the Planning Commission must approve the change. BE 1 ("Any changes/additions/alterations of any binding element(s) shall be submitted to the Planning Commission for review and approval . . . ."). In the absence of any rule or indication that all owners of property subject to the specifications of the Development Plan must consent to a modification of a Binding Element, the Court cannot conclude that the Planning Commission acted arbitrarily by exceeding its statutory authority in not obtaining consent of all affected owners before modifying Binding Element 32 and approving USW's applications.

> **III.     Fenley had not presented evidence that it was denied procedural due process.**

The Planning Commission may also have acted arbitrarily if Fenley was not afforded procedural due process. *See Keogh*, 243 S.W.3d at 372. Fenley only addresses this issue on page nine of its brief, at the end of its background section. As in Count I of the Complaint, Fenley simply lists several due process concerns. Without additional discussion or evidence, the Court cannot find that Fenley was denied procedural due process.

> **IV.     Fenley has not demonstrated that it has a vested right or that it suffered an actual taking.**

"A vested right is the right to initiate or continue the establishment of a use or construction of a structure which, when completed, will be contrary to the restrictions or regulations of a recently enacted zoning ordinance." Rathkopf's Law of Zoning & Planning § 70:2. In Kentucky, vested rights arise when, prior to the enactment of new land use restrictions, the owner has "in good faith substantially entered upon the performance of the series of acts necessary to the accomplishment of the end intended." *Darlington v. Bd. of Councilmen*, 140

S.W.2d 392, 396 (Ky. 1940). "The theory of vested rights relates only to such rights as an owner of property may possess not to have his property rezoned after he has started construction." *Bischoff v. Hennessy*, 251 S.W.2d 582, 584 (Ky. 1952) (citation omitted). The rationale behind protecting vested rights is that the owner "has entered on construction work or incurred liabilities for that work which he would be deprived of by the rezoning." *Id.*

Fenley claims vested property rights in the Springdale Development Project that "include all of the conditions that were agreed to by the original applicant and property owners in connection with the approval of the General Development Plan and General Binding Elements." Fenley reasons that when it "bought and developed [its] office properties [it] did so with the legitimate expectation that its vested property rights in the General Development Plan and the General Binding Elements were protected under state and local law from being modified without its consent." Fenley argues that "[t]he conditions and agreements specified by the General Plan, the General Binding Elements and the Transcripts are property rights that are literally part of the essential 'bundle of rights' that are attached to the property that Fenley owns in the Springdale Development Project." This reasoning, however, is flawed.

Certain development agreements may grant a developer extended vested rights, Rathkopf's § 71:2, but there is no evidence that occurred in this case. The Binding Elements are subject to change. LDC § 11.4.7.A ("Binding elements . . . shall be binding upon the future use and development of said property unless specifically waived by the Planning Commission."); LDC § 11.4.7.C (Binding elements shall "be binding on the owner and applicant, their successors, heirs, or assigns, unless other wise amended or released by the Planning Commission in accordance with its By-laws, Policies and Procedures."); BE 1 ("The development shall be in

11

accordance with the . . . agreed upon binding elements unless amended . . . .").  As explained *supra*, Fenley does not have a "right" to consent to such changes.  Further, although Fenley may have an interest in opposing certain development of Lot 6 because it allegedly alters its expectations of what it must compete with, this interest does not amount to a vested right.  *See Bischoff*, 251 S.W.2d at 584; Rathkopf's § 71:2.

The U.S. Constitution protects vested property rights.  *Darlington*, 140 S.W.2d at 396.  Fenley does not have vested property rights in the "conditions and agreements specified by the General Plan, the General Binding Elements and the Transcripts."  Therefore, the Planning Commission's amendment of binding elements and approval of USW's application does not amount to a taking in violation of the Constitution.  Fenley has not otherwise argued it has a vested property right to develop the Fenley property.  Fenley has also not asserted any other actual taking of its property.[3]  Consequently, Fenley's takings claim fails.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint and Appeal is DISMISSED.

An appropriate order shall issue.

---

[3] In response to Defendants' argument that Fenley has not shown that it suffered an actual taking, Fenley states that proof of its "takings claims are matters that will be addressed when those claims are actually taken up by this Court" and that it "certainly retains the right to submit additional proof regarding these matters when the matters are addressed by this Court in relation to Fenley's federal takings claims should that become necessary."  The Court is puzzled by these statements.  Fenley brought this action, and filed a brief explicitly alleging that its rights pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution and Section 2 of the Kentucky Constitution were violated.  In its conclusion, Fenley argued it "should be awarded just compensation for the loss of its vested property rights."  There has been no bifurcation of issues or additional briefing scheduled.  Fenley's opportunity to make arguments regarding its takings claim was in its brief and reply.

12